■ EDNA BAMERT, Respondent, v CENTRAL GENERAL HOSPITAL, Appellant.—In an action to recover damages for personal injuries, predicated upon a theory of medical malpractice, defendant appeals from an order of the Supreme Court, Nassau County, dated December 14, 1979, which directed it to comply with a request for information pursuant to section 148-a of the Judiciary Law prior to a medical malpractice hearing. Order affirmed, with $50 costs and disbursements. Defendant's time to comply with the directive in the order under review is extended until 30 days after service upon it of a copy of the order to be made hereon, together with notice of entry thereof. Plaintiff alleges that she was a patient at defendant hospital, which had been notified by her personal physician that she was not to be permitted to go to the bathroom unassisted. She further alleges that a nurse employed by defendant permitted her, at one point during her stay at the hospital, to go to the bathroom unassisted in order of furnish a urine specimen. As plaintiff was walking toward the bathroom, she fell and suffered serious injuries, including a broken hip. The sole issue raised on this appeal is whether the defendant must appear for a hearing before a medical malpractice panel, pursuant to section 148-a of the Judiciary Law. The alleged act of malpractice was committed by a nurse in defendant's employ, and until recently, the law was settled that a nurse could not be liable for an act of medical malpractice (see *Wolff v Jamaica Hosp.*, 11 AD2d 801; *Isenstein v Malcomson*, 227 App Div 66; *Wildey v Kertzman*, 44 Misc 2d 258, affd 24 AD2d 519 [the issue used to arise in the context of a determination of the appropriate Statute of Limitations]). However, the more recent trend is to require a medical malpractice panel whenever, as is the case herein, a hospital is a named defendant; for example, subdivision 1 of section 148-a of the Judiciary Law provides for the establishment of medical malpractice panels to facilitate the disposition of malpractice actions, "including malpractice actions where a hospital is a named defendant". Moreover, subdivision 2 of section 335 of the Insurance Law requires insurance carriers to file, in instances of medical malpractice claims, reports containing, *inter alia,* the "name and address of physician, *nurse,* hospital or other person or institution against which claim is made" (emphasis supplied). These recent statutory amendments (see L 1975, ch 109), have led the Appellate Division, Fourth Department, to conclude that medical malpractice panels are required "even though [the alleged act of malpractice is] made by a nurse or other emergency room attendant" *(Musso v Westfield Mem. Hosp.,* 64 AD2d 851, 852; see, also, *Rosenburgh v University of Rochester [Strong Mem. Hosp.],* 60 AD2d 756). Granted, then, that a nurse can commit malpractice, it is to be noted that unlike the nurse in *Musso (supra,* p 852), it is not alleged that the nurse here did an act which "relates to a medical diagnosis" or which is "uniquely within the expertise" of a malpractice panel. She simply failed to carry out a physician's order. We find this distinction to be of no moment. In the recent case of *Collins v New York Hosp.* (49 NY2d 965, 967), the Court of Appeals was presented with a case in which "The hospital's responsibility did not involve medical judg-

ment; it was simply required to carry out the physicians' order." Citing *Toth v Community Hosp. at Glen Cove* (22 NY2d 255), the court ruled (p 967) that "Failure to do so can, of course, be found to be malpractice". Accordingly, as a nurse is legally capable of committing medical malpractice, and as the allegations indeed set forth a colorable claim therefor, the defendant hospital must appear before a medical malpractice panel. Hopkins, J. P., Margett and Weinstein, JJ., concur.

Damiani, J., dissents and votes to reverse the order and hold that defendant is not required to appear before a medical malpractice panel, with the following memorandum, in which Martuscello, J., concurs: Although allegations of malpractice by a nurse may be referred to a medical malpractice panel under section 148-a of the Judiciary Law *(Musso v Westfield Mem. Hosp.,* 64 AD2d 851), it is my opinion that the pleadings and bill of particulars must first reveal that the plaintiff is claiming that the nurse was performing duties calling for special training and talents as opposed to perfunctory or unskilled tasks. The claimed malpractice here is that an employee (the plaintiff could not remember whether it was a nurse or a nurse's aide) of the defendant hospital gave plaintiff a cup, directed her to provide a urine specimen and then left the room, leaving plaintiff to get up from her bed and ambulate to the toilet unattended in contravention of her doctor's standing order that she was to go to the bathroom only if she was assisted and that she was allowed out of bed only in a wheelchair. Plaintiff fell and, *inter alia,* broke her hip. Not every case which seeks to hold a hospital liable for injury to one of its patients is based upon malpractice. The majority holding in the case at bar unnecessarily blurs the line between malpractice and simple negligence. Although a malpractice action sounds in the tort of negligence *(Robins v Finestone,* 308 NY 543, 546; *Colvin v Smith,* 276 App Div 9, 10), the difference between malpractice and simple negligence is in the standard of care by which the action or inaction of the defendant is to be measured. In simple negligence cases, the defendant owes the duty of care which an ordinarily prudent and reasonable person would exercise under the circumstances (see 57 Am Jur 2d, Negligence, §§ 67-68). Medical malpractice is a particular form of negligence that consists of not applying to the exercise of the practice of medicine that superior degree of knowledge, skill and intelligence which is ordinarily employed by the profession generally under similar circumstances (61 Am Jur 2d, Physicians, Surgeons and Other Healers, § 110; Prosser, Torts [4th ed], § 32, pp 161-166). Actions involving medical malpractice should be referred to the medical malpractice panels; cases involving simple negligence should not. The alleged breach of duty in this case is far different than that in the case of *Musso v Westfield Mem. Hosp.* (64 AD2d 851, *supra),* in which the plaintiff sought to hold the defendant hospital liable for a faulty diagnosis by an emergency room nurse leading to subsequent loss of plaintiff's left leg due to frostbite and gangrene. Where a nurse, as in the *Musso* case *(supra),* is called upon to make a diagnosis so as to determine whether a condition is within his or her authority to treat as a first aid case or whether it is a condition requiring the care of a physician, the nurse's diagnosis and treatment must meet the standard of learning, skill and care to which nurses practicing in that profession in the community are held (see *Cooper v National Motor Bearing Co.,* 136 Cal App 2d 229). *Musso* merely stands for the proposition that where this higher standard of care applies, reference to a medical malpractice panel for its assessment of the nurse's performance is appropriate. However, it is the rule that in the performance of his or her general nursing duties not involving diagnosis and treatment, a nurse is

merely required to exercise ordinary and reasonable care to see that no unnecessary harm comes to the patient (Nurse's Liability For Her Own Negligence or Malpractice, Ann., 51 ALR2d 970, § 2, p 972; 61 Am Jur 2d, Physicians, Surgeons and Other Healers, § 117, p 242; *Isenstein v Malcomson*, 227 App Div 66, 68). In this case the plaintiff seeks to charge the defendant hospital for a breach of a duty of care by one of its employees causing her injury. It is not known whether this employee was a nurse. Obedience by whatever hospital personnel to the standing order of plaintiff's physician that plaintiff be assisted during trips to the toilet did not require the exercise of a high degree of professional training and skill. The standard of care applicable in ordinary negligence cases should apply here and there is thus no reason to send this uncomplicated case to a medical malpractice panel for evaluation. This case is distinguishable from the recent case of *Collins v New York Hosp.* (49 NY2d 965), citied by the majority, since the latter case involved the failure of hospital employees to perform certain medical tests which required special skill and training. The *Collins* case cites *Toth v Community Hosp. at Glen Cove* (22 NY2d 255) for its conclusion (p 967) that failure of nurses to follow a physician's order, although not involving medical judgment, "can * * * be found to be malpractice". The cited case does not stand for that proposition, however, since it appears that in *Toth* the hospital was held derivatively liable for "the *negligence* of the hospital's nursing staff" (22 NY2d 255, 258, *supra;* emphasis supplied; and see p 265). Accordingly, the order appealed from should be reversed.