OPINION OF THE COURT
Pizzuto, J.
Plaintiff, a medical partnership, sued to recover for medical services. Defendant counterclaimed for "common-law negligence” and listed a stated sum as his damages. He alleged that he submitted himself to Dr. Safier for a colonoscopy to search for polyps which if found were to be then and there removed in order to determine whether they were benign or malignant; that in the midst of the colonoscopy Dr. Safier told him that polyps were present and that only then did he ask defendant whether he had recently ingested aspirin to which defendant responded in the affirmative. Dr. Safier then correctly advised that he could not proceed at that time and the procedure would be completed at a later date. That although this was done, and the polyps found benign, defendant sustained damages because of the additional pain and interim worry.
Plaintiff moved, per CPLR 3012-a to dismiss the counterclaim. It alleged that the counterclaim sounded in medical malpractice and that the failure of defendant’s counsel to submit a certificate of merit required that it be dismissed. It also moved in the alternative for an order striking the ad damnum clause in the counterclaim, per CPLR 3017 (c). Further, it requested extension of time to serve an answer to the counterclaim if the court did not dismiss the counterclaim. The court below held that the counterclaim stated a cause of action in medical malpractice and dismissed it unless defendant submitted a proper certificate of merit within 45 days. It also struck the ad damnum clause and extended plaintiff’s time to answer the counterclaim.
*1004 We reverse, except to the extent of the court’s allowance to plaintiff of additional time to answer the counterclaim.
We agree with the court below as to its implicit holding that CPLR 3012-a’s requirement of a certificate of merit applies not only to a complaint but also as to a counterclaim sounding in medical malpractice (see, Brown v State of New York, 139 Misc 2d 1020; cf., Koplik v Arnott, 137 Misc 2d 944). However it is our view that the counterclaim herein sounded in common-law negligence, not medical malpractice, so that there was no need for a certificate of merit and no bar to stating the amount of damages.
Since a malpractice action is essentially a negligence action, based on negligence pertaining to doctors, dentists, lawyers, engineers and others who practice in specialty fields, the distinction between malpractice and negligence which must be made, at times presents some difficulty. "In that medical malpractice is simply a form of negligence, no rigid analytical line separates the two” (Scott v Uljanov, 74 NY2d 673, 674).
In medical malpractice it is the doctors themselves that set the standards of care owing to their patient, that is, the standards of good and acceptable medical practice in the community. Understandably, therefore, expert testimony is required to give opinions as to what those standards are and as to whether there were departures or deviations from those standards.
In negligence the standard is the conduct of a reasonably prudent person. To establish this standard of conduct (of omission or commission) no expert opinion is required or indeed appropriate, for that is within the knowledge of the trier of the facts.
The general rules and the exceptions or distinctions are enunciated with facility. Their application in a given fact pattern often times becomes controversial (see, e.g., Stanley v Lebetkin, 123 AD2d 854).
Thus, the general rule (as quoted in the dissenting opn of Monteleone, J. P.): "Conduct may be deemed malpractice, rather than negligence, when it 'constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician’. (Bleiler v Bodnar, 65 NY2d 65, 72.)” (Scott v Uljanov, 74 NY2d 673, 674-675, supra.)
The exception or distinction: In Coursen v New York Hospital-Cornell Med. Center (114 AD2d 254, 256 [1st Dept, Feb. 1986]), after enumerating several cases where negligence *1005 causes of action were upheld, the court stated "These and other cases hold that negligence rules are applicable in those situations where the issue relating to the exercise of due care may be 'easily discernible by a jury on common knowledge’ Also, in Miller v Albany Med. Center Hosp. (95 AD2d 977, 978 [3d Dept, June 1983]), the court stated: "The distinction between ordinary negligence and malpractice turns on whether the acts or omissions complained of involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons or whether the conduct complained of can instead be assessed on the basis of common everyday experience of the triers of the facts” (see, Borrillo v Beekman Downtown Hosp., 146 AD2d 734 [2d Dept, Jan. 1989]; Kerker v Hurwitz, 163 AD2d 859 [4th Dept, July 1990], which quote the distinction enunciated in Miller v Albany Med. Center Hosp., supra).
The distinction made in Mossman v Albany Med. Center Hosp. (34 AD2d 263) may be somewhat revealing. The court distinguished between a case where there was a failure to equip a hospital bed with side rails after there had been a medical order for their use (negligence) from failure to use bed rails where there was no medical direction to use such equipment (malpractice). In the former, a jury can determine whether there has been a deviation from due care by applying its own common knowledge and experience, whereas, in the latter, resolution is dependant upon the opinion of a medical expert relating to the alleged departure from the operative standard of care applicable to such professionals.
In the case at bar all parties conceded (the doctor by his conduct and the patient in his pleadings) that the performance of polypectomy would be contrary to accepted medical standards where a patient has recently ingested aspirin. There is no prima facie need for expert testimony on this conceded fact. The standard of good and accepted medical practice is not an issue in the case. The issue that may be decided by the jury without the need of expert testimony (if defendant’s version of the facts are accepted) is whether the doctor was negligent in failing to advise his patient, prior to the day scheduled for the colonoscopy, not to take aspirin, or whether the doctor was negligent in not asking his patient if he had taken aspirin prior to commencing the colonoscopy procedure, rather than asking the question after he first observed the polyp through the scope.
We note that the counterclaim does not involve improper
*1006 diagnosis or assessment of defendant’s condition or the degree of required supervision (see, Halas v Parkway Hosp., 158 AD2d 516). Since the counterclaim asserted that Dr. Sailer’s postponement of the polypectomy was correct there was no need for expert medical testimony as to its propriety. The fundamental issues to be determined at trial are whether Dr. Safier or his staff advised defendant to abstain from aspirin, and also, whether Dr. Safier was negligent in not asking his patient if he did take aspirin prior to commencing the colonoscopy procedure. Since these issues may readily be assessed based upon common everyday experience of the trier of facts, without the need of expert testimony, the action sounded in ordinary negligence (see, Halas v Parkway Hosp., supra; Huntley v State of New York, 62 NY2d 134). Similarly, since the counterclaim sounded in negligence the recitation of a stated amount of damages was not barred by CPLR 3017 (c).
Orders insofar as appealed, reversed without costs, and plaintiff’s motion, to the extent that it sought dismissal of the counterclaim and striking of the ad damnun clause denied.